**WARNING: THIS IS A SEALED DOCUMENT CONTAINING NON-PUBLIC INFORMATION**

CLIFFORD B. HUNT 3425
ATTORNEY AT LAW
FOUR WATERFRONT PLAZA, SUITE 480
500 ALA MOANA BLVD., BOX 27
HONOLULU, HAWAII 96813-4908
(808) 545-4050; FAX: (808) 532-9599
e-mail: cliffhunt@msn.com



LODGED

JAN 0 6 2004
CLERK, U.S. DISTRICT COURT
DISTRICT OF HAWAII

ATTORNEY FOR DEFENDANT
EDUARDO C. MINA

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO. 02-00209 (05) DAE |
| | ) | |
| Plaintiff, | ) | DEFENDANT EDUARDO C. MINA'S |
| vs. | ) | EX PARTE MOTION FOR 18 U.S.C. |
| | ) | §3006A(e)(1) CJA SERVICES AND |
| EDUARDO C. MINA,        (05) | ) | EXPENSES; DECLARATION OF |
| | ) | COUNSEL; EXHIBITS A through E; |
| | ) | MEMORANDUM IN SUPPORT OF |
| Defendant. | ) | MOTION; ORDER GRANTING EX |
| | ) | PARTE MOTION FOR 18 U.S.C. |
| | ) | §3006A(e)(1) CJA SERVICES AND |
| | ) | EXPENSES  AND SEALING |
| | ) | DOCUMENT |
| | ) | |
| _____ | ) | JUDGE: |

DEFENDANT EDUARDO C. MINA'S EX PARTE MOTION

FOR 18 U.S.C. §3006A(e)(1) CJA SERVICES AND EXPENSES

SEALED
BY ORDER OF THE COURT

EXHIBIT C

Comes Now Clifford B. Hunt, counsel for defendant EDUARDO C. MINA, and respectfully moves this Court *ex parte* for an Order for $4,920.00 for the services of an ink dating expert.

Defendant also respectfully requests that the Order attached hereto, this Ex Parte Motion, the Declaration of Counsel and any other pleadings, documents or exhibits attached hereto (collectively "Document"), be sealed to permit appellate review if necessary, and to prevent Plaintiff or other persons or entities from unauthorized access to the information contained herein as said information may reveal information or strategy of the defense to permit appellate review if necessary, and to prevent Plaintiff or other persons or entities from unauthorized access to the information contained herein as said information may reveal information or strategy of the defense to Plaintiff, or other persons or entities that is, privileged under the attorney client, work product, and/or other legal privileges, and/or not discoverable under the Federal Rules of Criminal Procedure, the Local Rules of this Court and/or other applicable statutes or rules, or that would otherwise be unavailable to plaintiff, or other persons or entities, the disclosure of which could or would deny an indigent defendant effective assistance of counsel, an adequate defense, due process and equal protection of the law.

This Motion is made pursuant to 18 U.S.C. §3006A(e), L.R. 110-7©), Rules

-2-

12, 47 and 49 of the Federal Rules of Criminal Procedure, and is based upon the Sixth and Fourteenth Amendments to the Constitution of the United States of America, the Declaration of Counsel and Memorandum of Law attached hereto, and the records and files herein.

DATED: Honolulu, Hawaii, January 6, 2004.

CLIFFORD B. HUNT
Attorney for Defendant
EDUARDO C. MINA

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CR. NO. 02-00209 (05) DAE |
| | ) | |
| Plaintiff, | ) | DECLARATION OF COUNSEL |
| vs. | ) | |
| | ) | |
| EDUARDO C. MINA,    (05) | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| ———————————— | ) | |

## DECLARATION OF COUNSEL

I, Clifford B. Hunt, hereby declare as follows:

1. I am the Criminal Justice Act ("CJA") Panel attorney for Defendant EDUARDO C. MINA ("defendant").

2. By virtue of my appointment, defendant is eligible to request authorization to incur "investigative, expert, or other services necessary for adequate representation" under the CJA 18 U.S.C. §3006A(e)(1).

3. I respectfully request authorization to incur the following "investigative, expert, or other services necessary for adequate representation" under 18 U.S.C. §3006A(e)(1) employment of ink dating expert Albert H. Lyter, III of Federal Forensic Associates, Inc. PO Box 31567, Raleigh, North Carolina 27612, Tel. (919) 848-3696, Fax. (919) 848-9849, Website: www.inkdating.com.

4. The basis for the request is as follows.

5. On January 30, 2002, defendant made statements in response to interrogation by law enforcement officers (agents) at the Kalihi Police Substation.

6. On March 6, 2003, defendant filed a motion to suppress those statements.

7. Prior to the hearing on the motion pursuant to a defense request for any agent's notes of defendant's statement the government advised the defense that nine pages of notes prepared by one of the agents did exist.

8. On May 30, 2003, a hearing was held on the motion to suppress. Defendant testified that the agents recorded the interrogation. See Exhibit A.

9. The agents testified that the interrogation was not recorded. See Exhibit B.

10. Defendant has been insistent with defense counsel that the agents did not take notes of the interrogation because they were taping it and that the notes were fraudulently created sometime after the interrogation and before the suppression hearing to cover up the taping. See Exhibit C.

11. Defendant's actions have resulted in the government offering him a polygraph examination by the FBI concerning theses issues and others. See Exhibit D.

12.  On January 5, 2004 I contacted TASA (Technical Advisory Service for Attorneys) concerning locating an expert in ink dating or document aging and was informed that they have one expert available for that kind of work, Albert H. Lyter, III of Federal Forensic Associates, Inc.

13.  On January 6, 2004 I called Dr. Lyter and informed of the facts of the case and he advised me that his firm may be able to determine the age of the agents notes by taking in samples from the original notes.   He advised me that the examination and testing would involve anywhere from eight to twelve man hours of work if the original notes were sent to his laboratory and that his hourly rate for such work is $410.00 per hour.   Dr. Lyter's curriculum vitae and website home page are attached as Exhibit E.

14.  Based on the foregoing, I respectfully request authorization to incur $4,920.00 (12 hrs. x $410.00/hr.) in expert services with Federal Forensic Associates, Inc. for the examination and testing of the agent's notes.

15.  I respectfully believe that the services requested above are necessary for adequate representation of defendant.

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE AND BELIEF.

DATED:  Honolulu, Hawaii, January 6, 2004.


_____

CLIFFORD B. HUNT

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO. 02-00209 (05) DAE |
| | ) | |
| Plaintiff, | ) | MEMORANDUM IN SUPPORT OF |
| | ) | MOTION |
| vs. | ) | |
| | ) | |
| EDUARDO C. MINA,        (05) | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| ——————————————— | ) | |

## MEMORANDUM IN SUPPORT OF MOTION

18 U.S.C. §3006A(e)(1) provides that counsel for a person who is

financially unable to obtain investigative, expert, or other services necessary for

adequate representation may request them in an *ex parte* application.  Upon

finding that the services are necessary and that the person is financially unable to

obtain them, the court shall authorize counsel to obtain the services. Id.  The cost

of the services cannot exceed $1000 unless the court certifies that payment in

excess of the $1,000 limit was "necessary to provide fair compensation for

services of unusual character or duration" in the case. Id.

The government's duty "to provide an indigent criminal defendant with the

essential tools of trial defense is of both a constitutional and statutory dimension."

United States v. Rosales- Lopez, 617 F.2d 1349, 1355, (9th Cir., 1980). "Where expert services are necessary to an adequate defense the court must authorize them. E. g., Christian v. United States, 398 F.2d 517, 519, 6 A.L.R.Fed. 1001 (10th Cir. 1968). "Where expert services are necessary to an adequate defense the court must authorize them. E. g., Christian v. United States, 398 F.2d 517, 519, 6 A.L.R.Fed. 1001 (10th Cir. 1968). A clear standard for deciding what constitutes 'necessity' under s 3006A(e) has not yet been stated in this circuit. We agree with the views of Judge Wisdom, concurring in United States v. Theriault, 440 F.2d 713, 716-717 (5th Cir. 1971). The statute requires the district judge to authorize defense services when the defense attorney makes a timely request in circumstances in which a reasonable attorney would engage such services for a client having the independent financial means to pay for them." (emphasis added). United States v. Bass, 477 F.2d 723, 725 (9th Cir. 1973) as cited in U.S. v. Sims, 617 F.2d 1371 (9th Cir. 1980) (eyewitness identification expert). The same standard applies for the services of an investigator. U.S. v. Fields, 722 F.2d 549 (9th Cir. 1983) and Bonin v. Calderon, 59 F.3d 815 (9th Cir. 1995). The decision to grant or deny a request for investigative services under § 3006A(e) is committed to the discretion of the trial court. United States v. Smith, 893 F.2d 1573, 1580 (9th Cir.1990).

DATED: Honolulu, Hawaii, January 6, 2004.


_____
CLIFFORD B. HUNT

1           IN THE UNITED STATES DISTRICT COURT

2              FOR THE DISTRICT OF HAWAII

3

4   UNITED STATES OF AMERICA,        )
                                     )  CR 02-00209 DAE 05
5                      Plaintiff,    )
          vs.                        )  Honolulu, Hawaii
6                                    )  May 30, 2003
    EDUARDO MINA,                    )  9:45 A.M.
7                                    )
                       Defendant.    )  Defendant's Motion to
8                                    )  Suppress Statements;
                                     )  Defendant's Motion to
9   _____ )  Suppress Evidence

10                   TRANSCRIPT OF PROCEEDINGS
              BEFORE THE HONORABLE DAVID ALAN EZRA
11             CHIEF UNITED STATES DISTRICT JUDGE

12

13  APPEARANCES:

14  For the Government:         J. MICHAEL SEABRIGHT, ESQ.
                                CRAIG H. NAKAMURA, ESQ.
15                              Office of the U.S. Attorney
                                PJKK Federal Bldg.
16                              300 Ala Moana Blvd., Ste. 6100
                                Honolulu, HI 96850
17  For the Defendant:          CLIFFORD B. HUNT, ESQ.
18                              500 Ala Moana Blvd., Ste. 480
                                Honolulu, HI 96813
19  Official Court Reporter:    Debra Kekuna Chun, RPR, CRR
20                              United States District Court
                                300 Ala Moana Blvd., Ste. C285
21                              Honolulu, HI 96850
                                (808) 534-0667
22

23

24
    Proceedings recorded by machine shorthand, transcript
25  produced with computer-aided transcription (CAT).

# EXHIBIT A

1    Q    And where was Agent Campbell?

2    A    Oh, behind her.  About -- they were not side by side

3    really.  They were -- Agent Campbell was behind her, and it

4    was doing like that (indicating).

5    Q    Okay.  But you were on the one side of the table by

6    yourself; is that right?

7    A    Yeah.  And Agent Yamane was on the other side with the

8    tape-recording, is manipulating it.  That's why I know that

9    our interview was taped.  I do not know why they will not

10    bring the tape out.

11    Q    And to your left, by your left hand, that direction is

12    where the door was in the interview room.

13    A    No.  Agent Yamane is there.  I am here.  The

14    (indicating) -- the tape recorder was here, and it was

15    always being manipulated by Agent Yamane.

16    Q    I'm not asking about the tape recorder right now, sir.

17    I'm asking you where was the door to the room in relation

18    to where you were sitting?

19    A    Maybe back left.

20    Q    Behind you to the left?

21    A    Yeah.

22    Q    Okay.  So you're saying it wasn't to your immediate

23    left.

24    A    I said back left.

25    Q    The back left, okay.  And did you have free access to

1    get from where you were to the door?

2    A    What do you mean by "free access"?

3    Q    Let me ask it a different way.  Was there anything

4    blocking you from standing up and walking to the door?

5    Physically, was there anything blocking you?

6    A    Yeah.

7    Q    What was blocking you?

8    A    Yeah, there is no impediment.  Nobody blocks the door.

9    Q    And after Agent Yamane played the tape you told him

10    that you had found Jesus Christ and realized what you had

11    done was wrong; isn't that correct?

12    A    I told him about Jesus immediately because I am a

13    new -- what I would say a new child of God.

14    Q    And you told him you realized what you were doing at

15    the Liquor Commission was wrong; isn't that correct?

16    A    That's correct.

17    Q    And you went on to tell him that you accepted money in

18    return for overlooking violations.

19        MR. HUNT:  Objection.

20        THE WITNESS:  That is his own --

21        MR. HUNT:  Wait, wait, wait.  Objection.  Not

22    relevant to the purposes of these proceedings.

23        THE COURT:  Sustained.

24        MR. HUNT:  Move to strike his response, if it was

25    recorded by the reporter, Your Honor.

1          THE COURT:  Granted.

2          MR. SEABRIGHT:  I have nothing further, Your

3   Honor.  Thank you.

4          THE COURT:  Redirect.

5                REDIRECT EXAMINATION

6   BY MR. HUNT:

7   Q    Mr. Mina, why -- you testified that you thought the

8   interview was taped?

9   A    Again?

10  Q    When you were at the police station with the agents,

11  you testified, I believe, that you thought they were

12  recording that session.

13  A    I do not know -- he was manipulating.  While asking

14  questions he was manipulating the tape.

15  Q    Did they play a tape of David Lee and you talking for

16  you?

17  A    Yeah, he played that tape, but before he played he pu

18  the tape.  Then after the playing that tape, he remove the

19  tape, put another tape.

20  Q    So -- and then after he put that other tape in there

21  and while they were questioning you, did you see him

22  operate the recorder as if he was recording it?

23  A    As I told you, he was doing like that to the tape

24  (indicating).  I do not know.  While asking questions he

25  was doing like that to the tape.

1          IN THE UNITED STATES DISTRICT CO

2              FOR THE DISTRICT OF HAWAII

3

4    UNITED STATES OF AMERICA,      )   CR 02-00209
                                    )
5                   Plaintiff,      )   Honolulu, H
         vs.                        )   May 30, 200
6                                   )   9:45 A.M.
     EDUARDO MINA,                  )
7                                   )   Defendant's
                    Defendant.      )   Suppress St.
8                                   )   Defendant's
                                    )   Suppress Ev:
9    _____ )

10             TRANSCRIPT OF PROCEEDINGS
         BEFORE THE HONORABLE DAVID ALAN EZF
11           CHIEF UNITED STATES DISTRICT JUDGE

12

     APPEARANCES:
13

     For the Government:           J. MICHAEL SEABRI
14                                 CRAIG H. NAKAMURA
                                   Office of the U.S
15                                 PJKK Federal Bldg
                                   300 Ala Moana Blv(
16                                 Honolulu, HI 96850

17   For the Defendant:           CLIFFORD B. HUNT,
                                  500 Ala Moana Blv(
18                                Honolulu, HI 9681:

19   Official Court Reporter:     Debra Kekuna Chun,
                                  United States Dist
20                                300 Ala Moana Blvd
                                  Honolulu, HI 96850
21                                (808) 534-0667

22

23

24

     Proceedings recorded by machine shorthand, trans
25   produced with computer-aided transcription (CAT)

EXHIBIT *B*

1    investigation?

2            MR. SEABRIGHT:  Your Honor, objection.  The issue

3    is whether or not Mr. Mina felt he was under arrest or not

4    free to leave, not what was in Agent Yamane's mind.

5            THE COURT:  Overruled.

6    BY MR. HUNT:

7    Q    Please answer the question.

8    A    I'm sorry.  Could you restate the question, please.

9    Q    Did you think that by playing that tape for Mr. Mina

10   or your purpose in bringing that tape for Mr. Mina was to

11   let him know that you had information on him and that it

12   would cause him to cooperate with the investigation?

13   A    Yes, that's correct.

14   Q    Now, you didn't record the interrogation of Mr. Mina

15   at the Kalihi substation, did you.

16   A    No, I did not.

17   Q    Why not?

18   A    It's FBI policy that, except for unusual

19   circumstances, we usually do not record interviews.

20   Q    Other than this FBI policy were there any other

21   reasons why you did not record the interrogation of Mr.

22   Mina at the Kalihi substation?

23           MR. SEABRIGHT:  Your Honor, I'm going to object

24   again.  It doesn't go to whether or not this individual

25   should have been given his Miranda warnings, and that's the

Oct. 16, 2003

Dear Atty. Hunt,

This will acknowledge with thanks receipt of your letter to Mr. Seabright dtd. Oct. 7, 2003 and Mr. Seabright's reply dtd Oct. 10, 2003!

My Comments:

Larceny/theft/ Stealing is a form of dishonesty.

The prosecution will fight tooth and nail to give us the alleged note because it is fake in the sense that it was not written during my interrogation/investigation on Jan. 30, 2003. As I told you agent Yamane taped my investigation and the lady investigator sat in one corner w/ folded arms.

They suppressed the tape because it will not pass judicial scrutiny because of leading and misleading questions. Suggestive and even the name Penji was supplied by Yamane. I do not know if Penji is a woman or a man. Besides their lies will be exposed, because I really told them that I was sick, I told them to do it another day that I ride in my car and they did not tell me that I am free to go.

Can I undergo a lie detector test re: genuineness of the note which was written after Jan. 30 and then present it to the court? I am 100% sure that it is fake and how sad it is convicted based on a fake do

**EXHIBIT** *C*

Please leave no stone unturned till we can show to the court that the note is fake. It is a sanitized transcription of the tape.

Sincerely,

# UNITED STATES DISTRICT COURT

### DISTRICT OF HAWAII
300 ALA MOANA BLVD. RM C-209
HONOLULU, HAWAII 96850

KEVIN S.C. CHANG
UNITED STATES MAGISTRATE JUDGE

TELEPHONE: (808) 541-1308
FAX: (808) 541-3519

November 25, 2003

Ed Mina
Number 0-2319-093
FDC Honolulu
P.O. Box 30080
Honolulu, HI 96820

Re: CR 02-00209-05 DAE

Dear Mr. Mina,

    I am in receipt of your letter dated November 23, 2003. You are represented by counsel and any requests should be made by your attorney. A copy of your letter will be forwarded to your attorney and the Assistant United States Attorney. As such, the court takes no action with regards to your November 23, 2003 letter.

Sincerely,

Kevin S.C. Chang
United States Magistrate Judge

cc:   Clifford Hunt, Esq. (w/enclosure)
      Assistant United States Attorney Craig Nakamura (w/enclosure)

COPY    Nov. 23, 2003

Your Honor,

I am writing you this letter in the name of justice.

I told my lawyer to go for the note because I am very sure there was no note, and testified. And if they (FBI agents) will produce one it is fake because it was not written on Jan. 30, 2002.

If a note is produced, I want the note to be aged by a pretigious Lab. I am very sure that it was not made on 1/30/02.

Anyway, I will meet those agents on the Final Judgment Day and they will answer for their foul tactics and false testimonies; because All liars shall have their part in the lake which burneth w/ fire and brimestone which is the second death.

I do hope that justice will be dispensed and will prevail.

God bless you and your family.

Very truly yours

ED MINA
Defendant
Cr. No. 02-00209-05 DAE

The note is a sanitized transcription of my tape recorded interrogation.

Dec. 4, 2003

Dear Atty Hunt,

I received the notes today. Thank you.
These are my initial observations.

1. My date of birth, etc are not in the notes, how can they remember my date of birth, etc? para 1 on p. 1.

2. Paras 5 & 6 of p. 1 are not in the notes. How did they know when I migrated to the U.S., that I was Insp. General, that I was employed in the L.I. in 1997?

These two alone are proofs, that the notes were fabricated, hence its aging is impelling.

They can not bring out the tape because their lies and foul tactics will be exposed.

Furthermore:

Please see last line of p. 4 of note = "Pink Rose — the lady Kenji: maybe gave 200." Kenji was supplied by Yamane. I do not know if Kenji is a man or a woman. This indicates that Yamane personally knows Kenji and he told Campbell to correct the mistake by crushing out lady and the insertion of a he between "maybe" and gave.

Also the 9th line on p. 5 of note — Yun Hee was supplied by Yamane. Also the 12th line on p. 6 of note with a crush — the rough estimate is that of Yamane.

So long for now, please cause the

aging of the notes

Very truly yours,



**U.S. Department of Justice**

*United States Attorney*
*District of Hawaii*

---

*PJKK Federal Building*                              *(808) 541-2850*
*300 Ala Moana Blvd., Room 6-100*              *FAX (808) 541-2958*
*Honolulu, Hawaii 96850*

December 23, 2003

Clifford B. Hunt, Esq.
Four Waterfront Plaza, Suite 480
500 Ala Moana Boulevard, Box 27
Honolulu, Hawaii  96813-4908

    Re: United States v. Mina, et al.
      Cr. No. 02-00209 DAE

Dear Mr. Hunt:

   As you know, Mr. Mina has indicated that he is willing to take a "lie detector test" on issues relating to his prosecution.  We are willing to accommodate Mr. Mina, and are requesting that he undergo a polygraph examination by a trained and certified FBI polygraph examiner.  Among the questions we intend to ask Mr. Mina are 1) whether Task Force Agent Campbell took notes during Mr. Mina's interview at the police station on January 30, 2002; 2) whether Mr. Mina was advised that he was not under arrest and free to leave; and 3) whether Mr. Mina was forced by Agents Yamane and Campbell to accompany them to the police station.  These are matters on which Mr. Mina has indicated he is willing to take a "lie detector" test.

   We are also willing to polygraph Mr. Mina on other questions relating to his guilt or innocence of the crimes charged in the Indictment, including whether he took money from bar owners in return for overlooking liquor violations.

   Please let us know what Mr. Mina's response is to our offer to have him tested by an FBI polygraph examiner.

        Very truly yours,

        EDWARD H. KUBO, JR.
        United States Attorney
        District of Hawaii

        By
        J. MICHAEL SEABRIGHT
        CRAIG H. NAKAMURA
        Assistant U. S. Attorneys

cc:  Miles Yamane, Special Agent
   Federal Bureau of Investigation

# EXHIBIT D

# Federal Forensic Associates, Inc.

Back to main site page

# *Albert H. Lyter, III*

### *Education:*

- B.S. Chemistry, Oklahoma City University, 1973
- B.S. Biology, Oklahoma City University, 1973
- M.S. Forensic Science, George Washington University, 1975
- Ph.D. Analytical Chemistry, University of North Carolina-Chapel Hill, 1999

### *Training:*

- Fiber Microscopy, Institute of Paper Chemistry, 1975
- X-ray Spectrometry, State University of New York, 1976
- Questioned Documents, United States Secret Service, 1977
- High Pressure Liquid Chromatography, Waters Associates, 1978
- High Pressure Liquid Chromatography, American Chemical Society, 1978
- Forensic Microscopy, McCrone Research Institute, 1978
- Surface Analysis Techniques, Physical Electronics, 1992
- Identification of Photocopiers, New Mexico State Police, 1983
- Canon Facsimile Workshop, American Society of Questioned Document Examiners, 1991

### *Experience:*

- September 1981 to present

  President and Chief Scientific Officer of Federal Forensic Associates, Inc.
  Engaged in consultation, examination, training, research and testimony in Forensic Science, including ink and paper analysis, trace evidence and questioned document examination.
  Qualified trace evidence areas include fire debris, explosives, paint, hair, fiber, glass and wood.

- January 1975 to September 1981

  Forensic Chemist, U.S. Treasury Department, Bureau of Alcohol, Tobacco and Firearms, National Laboratory Center, Rockville, Maryland.
  Engaged in consultation, examination, training, research and testimony as service to federal and state law enforcement.
  Court qualified in federal, state and military courts in over 33 states, U.S. Virgin Islands, Australia, Canada, Mexico, Malaysia and Singapore.
  Instructor at the FBI Academy, Federal Law Enforcement Training Center, Naval Investigative Service, Florida Department of Law Enforcement, colleges and universities.
  Lecturer at numerous scientific and legal organization meetings to include the American Academy of Forensic Sciences, American Society of Questioned Documents Examiners, California Association of Criminalists, International Association of Forensic Scientists.

### *Professional Organizations:*

- Fellow, American Academy of Forensic Sciences

- Mid-Atlantic Association of Forensic Scientists
- Examination committee member to the American Board of Criminalistics.
- California Association of Criminalists
- Society of Forensic Ink Analysts - President
- Southwestern Association of Forensic Document Examiners
- International Association of Forensic Sciences
- American Society For Testing and Materials
- American Chemical Society

## Publications:

- Comparison of Paper Samples - IAI News, 1976
- Comparison of Typewriter Ribbon Inks by Thin Layer Chromatography - Journal of Forensic Science, 1977
- A Scientific Study of Pencil Lead - Journal of Forensic Science, 1978
- Analysis of Water Soluble Paper - Journal of Forensic Science, 1980
- Comparison of Typewritten Carbon Impressions - Journal of Forensic Science, 1982
- Examination of Ball Pen Ink by High Pressure Liquid Chromatography - Journal of Forensic Science, 1982
- Ink Analysis, A Key Element in Questioned Document Examination - Trial, 1983
- A High Performance Liquid Chromatographic (HPLC) Study of Seven Common Explosive Materials - Journal of Forensic Science, 1983
- Finding Fraudulent Documents - Family Advocate, 1989
- Attempted Determination of Authorship by Ball Pen Line Characteristics - Forensic Science International, 1990
- Analysis of Writing Ink - chapter in book HPLC in Forensic Science, 1982
- Contributions to the book Forensic Ink and Paper Examination by Brunelle and Reed, 1982
- Ph.D. Dissertation - Surface Characterization of Polymeric Materials by X-ray Photoelectron Spectroscopy and Time-of-Flight Secondary Ion Mass Spectrometry: Biomedical Materials and Forensic Applications

## Honors:

- Honorary Assistant Attorney General, State of Alabama
- Treasury Award for Outstanding Performance
- Honorary Member - Southwestern Association of Forensic Document Examiners

## Certification:

- Diplomat of the American Board of Criminalistics

## Cases of Note:

- Mormon Will of the late Howard R. Hughes
- Slander trial of CBS, Sixty Minutes and Dan Rather
- Nazi war crimes case of Ivan Demjanjuk

Contact Federal Forensic Associates FFA@InkDating.com

Back to main site page

Welcome to Federal Forensic Associates, Inc.
Good Morning
Time: 9:59 Date: 1/6/2004

# Federal Forensic Associates, Inc.

Links

Home page

FAQ

About Albert
Lyter

Video
Densitometer

Thin Layer
Chromatography
(TLC)

Scanning
Electron
Microscope

Fourier
Transform
Infrared
Spectroscopy

Atomic Force
Microscopy

X-ray
Photoelectron
Spectroscopy

Publications

Federal Forensic Associates Inc.

*John Hancock*

www.InkDating.com

*Federal Forensic Associates, Inc.*
*Post Office Box 31567*
*Raleigh, North Carolina 27612*
*(919) 848-3696     FAX (919) 848-9849*
*E-mail FFA@inkdating.com*

The validity of documentary evidence is of paramount interest in many different types of litigation. The medical record which is found to contain additions or interlineations can challenge the veracity of witnesses. The Last Will and Testament which is found to contain an ink formulation not commercially available until years after the supposed preparation date can prove the fraudulence of the instrument. The diary maintained by a victim of sexual harassment may be proven authentic as a contemporaneous record of events through analysis of the ink. All of these situations are actual cases in which Federal Forensic Associates, Inc. has provided expert services including examination, consultation and testimony. When you think a document is "too good to be true", it probably is. With advances in technology many documents which could not be analyzed just 5 years ago are possible sources of important information. We employ state-of-the-art technology for the analysis of any type of document evidence to answer questions relating to the method and timeliness of preparation. Paper, ink, typewriter, computer printer, carbon paper, xerographic copies and pencil are some of the materials previously examined by Federal Forensic Associates, Inc.

Check our list of Frequently Asked Questions for more details.

Here is a sampling of some of the tools we use.

**Scanning Electron Microscope** provides the capabilities of increased magnification for analysis of particulate evidence, paper fibers or the intersection of written lines to determine sequence of preparation. The increased capability of x-ray analysis allows for characterization of a variety of

Federal Forensic Associates. Inc.                                    Page 2 of 2

Case 1:02-cr-00209-DAE    Document 473-5    Filed 04/30/2007    Page 27 of 29

evidence including paper, ink, toner and pencil. This characterization allows for a determination of common origin or source.

**Fourier Transform Infrared Spectroscopy** is a molecular spectroscopy which is used to characterize both organic and inorganic evidence. Its uses range from differentiation of toner samples, which indicates the use of multiple xerographic machines, to the detection of specific inorganic components in paper or pencil, which would aid in the determination of common origin.

The **Atomic Force Microscopy** allows for discrimination of surface features at the atomic level. This methodology is useful for the determination of line sequence and the characterization of surface features such as staple marks, creases in paper or other irregularities in the paper surface.

**X-ray Photoelectron Spectroscopy** is an atomic spectroscopy which is capable of elemental and molecular information. It is used for the characterization of toner materials and can give information regarding the age of xerographically produced documents.

**Thin Layer Chromatography** is a separation technique ideally suited to the characterization of ink, carbon, typewriter ink and other materials containing colored components. TLC is used routinely to differentiate between ink formulations and to identify the specific manufacture of an ink which appears on a questioned document.

**Reflectance Spectrophotometry, or Densitometry** is a quantitative technique which is used to determine the relative amounts of components present in inks, or the extraction characteristics of a given written entry. This information can help determine the number of different writing instruments used to prepare a given entry or the relative age of an entry in comparison with other writings.

**Electrostatic Detection Apparatus** is a methodology used to detect and visualize the indented impressions present on a page of paper. These impressions are the result of the preparation of writing on a document while in contact with the examined page of paper. The content of indented impressions and the identity of their source can allow for the determination of the sequence of preparation of different documents. Therefore an out of sequence document can be shown to have been prepared at a time different from its date.

Contact Federal Forensic Associates FFA@InkDating.com

Top of page

Site built by Ly-Core Solutions  12-2000
E-mail Ly-Core Webmaster

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO. 02-00209 (05) DAE |
| | ) | |
| Plaintiff, | ) | ORDER GRANTING DEFENDANT |
| | ) | EDUARDO C. MINA'S EX PARTE |
| vs. | ) | MOTION FOR 18 U.S.C. §3006A(e)(1) |
| | ) | CJA SERVICES AND EXPENSES |
| EDUARDO C. MINA,        (05) | ) | AND SEALING DOCUMENT |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

ORDER GRANTING DEFENDANT EDUARDO C. MINA'S
EX PARTE MOTION FOR 18 U.S.C. §3006A(e)(1) CJA
SERVICES AND EXPENSES AND SEALING DOCUMENT

Defendant having established his inability to pay for the expenses identified

in the attached Declaration of Counsel, and said Declaration having established

that said expenses are necessary for adequate representation and necessary to

provide fair compensation for services of unusual character or duration for

effective assistance of counsel, and

GOOD CAUSE APPEARING THEREFOR;

IT IS HEREBY ORDERED that this Ex Parte Motion be and is hereby

granted and that Clifford B. Hunt is hereby authorized to incur litigation expenses

-4-

for the purposes set forth in the Declaration of Counsel attached hereto in an amount not to exceed $4,920.00.

IT IS FURTHER ORDERED THAT this Order, the Ex Parte Motion, the Declaration of Counsel and any other pleadings, documents or exhibits attached hereto, be sealed and made part of the record of the proceedings of this case to permit appellate review if necessary, and to prevent Plaintiff or other persons or entities from unauthorized access to the information contained herein as said information may reveal information or strategy of the defense to Plaintiff, or other persons or entities that is, privileged under the attorney client, work product, and/or other legal privileges, and/or not discoverable under the Federal Rules of Criminal Procedure, the Local Rules of this Court and/or other applicable statutes or rules, or that would otherwise be unavailable to plaintiff, or other persons or entities, the disclosure of which could or would deny an indigent defendant effective assistance of counsel, an adequate defense, due process and equal protection of the law.

Dated: Honolulu, Hawaii _____.

_____

Judge of the Above-entitled Court

Cr. No. CR. NO. 02-00209 (05) DAE ; United States of America vs. EDUARDO C. MINA; ORDER GRANTING
DEFENDANT EDUARDO C. MINA'S EX PARTE  MOTION FOR 18 U.S.C. §3006A(e)(1) CJA SERVICES
AND EXPENSES AND SEALING DOCUMENT